**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LEON MARK KIZER,

        Plaintiff,

vs.

PTP, INC. et al.,

        Defendants.

3:15-cv-00120-RCJ-WGC

**ORDER**

This case arises over a dispute regarding the validity of a lease between Plaintiff and Defendant PTP, Inc. for certain Indian land that is held in trust by the United States on Plaintiff's behalf. Pending before the Court is Defendants' Motion to Dismiss (ECF Nos. 229, 233, 234, 290).[1] Also pending is a Motion to Join the Bureau of Indian Affairs as an Additional Party Defendant (ECF No. 203) filed by Defendant Pineview Homeowners Association ("PVHOA"). The Court has considered the parties' filings, and for the reasons contained herein, the Motion to Dismiss is granted in part and denied in part, and the Motion to Join is granted.

**I.  BACKGROUND**

Plaintiff Leon Mark Kizer is a member of the Washoe Indian Tribe of Nevada and California. (Compl. ¶ 4, ECF No. 1). He owns a 62.76-acre parcel of land in Douglas County, Nevada ("the Property") that the United States holds in trust for him pursuant to 25 U.S.C. § 348.

---

[1] The actual Motion to Dismiss is ECF No. 229, the other docket numbers reflect additional Defendants joining in the Motion.

1

(*Id.*).  In October 1997, Plaintiff entered into a 99-year lease (fifty years plus an automatic renewal of forty-nine years) of the Property ("the Master Lease") with PTP, a commercial developer, for $331,000. (*Id.*; Master Lease § 9(1), ECF No. 1-2)).  The Master Lease incorporates the provisions of 25 U.S.C. § 415 as well as the rules promulgated under 25 C.F.R. Part 162, which concern the leasing of allotted Indian-trust land such as the Property. (Compl. ¶ 13).  The Master Lease also contains a purchase option that grants PTP or a homeowners association with a right at any point after ten years from the date of the Master Lease to purchase the Property for a certain sum. (*Id.* ¶ 21).  The Master Lease was approved by Robert Hunter, the Superintendent of the BIA's Western Nevada Agency at the time. (*Id.* ¶ 27).  The Property was subdivided into 250 individual lots for single-family and manufactured homes and PTP invested considerable money in establishing infrastructure to support the developing community.

After October 1997, Plaintiff and PTP executed three separate amendments to the Master Lease.  The first amendment, ratified in 1998, adjusted the provision providing for the term of the lease, requiring approval of the Superintendent rather than an automatic renewal for the additional forty-nine years to take effect. (Mod. of Master Lease 1, ECF No. 1-3, Ex. 3).  The second amendment was agreed to in 2000, and it completely replaced the language governing the purchase option, requiring a one-time payment of $1,000 if a sub-lessee, rather than PTP or the HOA, chooses to exercise the option and requiring Plaintiff to take all steps necessary to secure a fee patent pursuant to federal regulations governing Indian-trust lands. (*Id.* at Ex. 4).  And the third amendment, signed by the parties in 2002, leased additional acreage from Plaintiff to PTP for $38,000. (*Id.* at Ex. 5).  Each of these amendments was approved by the local Superintendent who was serving at the time of the particular amendment. (Compl. ¶¶ 31–33).

In October 2006, the Bureau of Indian Affairs ("BIA") sent a letter to Brian Wallace, then Chairman of the Washoe Tribe of Nevada and California, in response to concerns the Tribe had expressed regarding certain provisions of the Master Lease, namely the length of the term and the purchase option. The BIA indicated to Wallace that both provisions appeared to violate federal law. (2006 BIA Letter 2, ECF No. 1-3, Ex. 6). The BIA explained that 25 U.S.C. § 415 allows trust land to be leased by the Indian owners, with approval from the Secretary of the Interior or his designated representative, for "business purposes." However, the term of such leases is not to exceed twenty-five years, with one additional term of twenty-five years, for a maximum duration of fifty years. (*Id.*). The sale of Indian-trust land is also restricted by Congress, with the terms and conditions of such regulations delegated to the BIA. Under relevant BIA regulations, non-Indian purchasers may only purchase trust land at the fair market value calculated at the time of sale and with BIA approval. (*Id.*). As such, the BIA expressed its view that the purchase option provision in the original lease was "null and void." (*Id.*).

Thereafter in 2010, the BIA sent a letter to the PVHOA, the association for the community developed by PTP, indicating that the Washoe Tribe had raised issues concerning the validity and enforceability of the Master Lease and that the BIA had engaged Plaintiff and its Western Regional Office ("WRO") in discussions regarding the term length and purchase option. (2010 BIA Letter 1, ECF No. 1-3, Ex. 7). The Letter explained that the WRO had prepared a framework whereby the leased premises could be transferred to fee status and that steps should be taken to correct the uncertainties in the Master Lease. (*Id.*). It requested that PVHOA confirm a meeting date with Plaintiff, the WRO, and representatives of PTP to determine how best to move forward. (*Id.*). On the facts provided, it is unclear whether such a meeting took place or what the parties resolved to do.

On February 26, 2015, Plaintiff filed the instant suit against PTP, PVHOA, and the individual sub-lessees of the 250 lots seeking declaratory judgment that the Master Lease—and subsequent subleases—are void *ab inicio* because the Master Lease violates federal law governing trust lands, and he asks the Court to quiet title to the Property in his favor. (Compl. ¶¶ 43–47). Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim. PVHOA has also moved to join the BIA as a party Defendant.

## II.     MOTION TO DISMISS

### A. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). "A complaint may be dismissed as a matter of law for one of two reasons: '(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim.'" *Allen v. United States*, 964 F. Supp. 2d 1239, 1251 (D. Nev. 2013) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)). Allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Id.* (citation omitted).

To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations, but it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged"). And while considering evidence outside the pleadings normally converts a Rule 12(b)(6) motion into one for summary judgment, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

**B. Discussion**

Defendants raise three theories in support of their Motion. They first argue that the case should be dismissed because Plaintiff has been unjustly enriched. Second, they contend that the case must be dismissed because it is barred by the relevant statute of limitations. And third, Defendants claim that Plaintiff is equitably estopped from pursuing his claims.

**1. Unjust Enrichment**

Defendants contend that even if the Master Lease is invalid, Plaintiff's claims are barred because he has not offered to return any of the money earned thereunder and is therefore unjustly enriched. "Unjust enrichment is an equitable rather than a legal claim; consequently, no action for unjust enrichment lies where a contract governs the parties' relationship to each other." *McKesson HBOC, Inc. v. N.Y. State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003). Accordingly, whether unjust enrichment applies in the present case is premised on whether the Master Lease is void. Since the validity of the Master Lease is the ultimate issue in this case, the Court cannot dismiss the Complaint on a theory that may or may not apply. Moreover, unjust enrichment functions best as an affirmative defense based on the facts of a particular case, and it is better addressed at the summary judgment stage. It is simply unclear at this point in the litigation whether there has even been unjust enrichment. Thus, this theory does not justify granting Defendants' Motion.

5

**2. Statute of Limitations**

Defendants next argue that Plaintiff's claims are barred by the statute of limitations. "There is no federal statute of limitations governing federal common-law actions by Indians to enforce property rights." *Oneida Cnty., N.Y. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 240 (1985). "In the absence of a controlling federal limitations period, the general rule is that a state limitations period for an analogous cause of action is borrowed and applied to the federal claim, provided that the application of the state statute would not be inconsistent with underlying federal policies." *Id.* Defendants cite N.R.S. 11.070 as an analogous state cause of action potentially applicable to this case. However, the Supreme Court has indicated that adopting state limitations periods with respect to Indian land claims would be inconsistent with federal policy. *Id.* at 241. And Defendants' Motion has not persuaded the Court that application of N.R.S. 11.070 would not violate federal policy, especially given the fact that the Master Lease itself may be in violation of law if not policy. Defendants' statute of limitations argument is therefore unavailing.

**3. Equitable Estoppel**

Defendants lastly argue that Plaintiff is equitably estopped from raising his claims against the Master Lease because he is a party to the agreement and consented to its terms, and because Plaintiff allowed Defendants to incur great expense in reliance on Plaintiff's representations over the past twenty years, including the subsequent amendments and multiple estoppel certificates. "Equitable estoppel is an age-old principle of equity." *First Nat'l Bank of Portland v. Dudley*, 231 F.2d 394, 400 (9th Cir. 1956). It stands for "the basic precepts of common honesty, ordinary fairness, and good conscience in dealing with the rights of those whose conduct has been prompted by reasonable good-faith reliance upon the knowing acts or omissions of another." *Id.*

6

1  (internal quotation omitted).  And it is "a weapon in [the] court's arsenal of inherent equitable

2  powers." *Cann v. Carpenters Pension Trust for S. Cal.*, 662 F. Supp. 501, 505 (C.D. Cal. 1987)

3  (citing *Dudley*, 231 F.2d at 400).

4        PTP and the individual Defendants have relied upon Plaintiff's acts—both word and

5  deed—for the past twenty years in regards to the Master Lease, and have invested time, money,

6  and effort accordingly.  When Plaintiff first discovered that the Master Lease contained

7  provisions potentially in violation of federal law, it would have been the equitable thing to

8  resolve the matter immediately rather than wait for years to pass before filing suit.  It is clear that

9  at the very latest, Plaintiff was informed of the possible issues with the term of the lease as well

10 as the purchase option in 2006.  Yet it appears as though Plaintiff took no steps to resolve the

11 problems and instead allowed PTP and others to continue investing in the Property.  It might

12 appear as though equitable estoppel should bar his claims.

13       Nevertheless, from the face of the pleadings, it is clear that there is an issue with at least

14 the ninety-nine year lease term such that simply dismissing the case would imply ratification of a

15 contract that was formed contrary to law.  This is something a court cannot do. *See Kaiser Steel*

16 *Corp. v. Mullins*, 455 U.S. 72, 83–84 (1982) ("It is also well established, however, that a federal

17 court has a duty to determine whether a contract violates federal law before enforcing it.  The

18 power of the federal courts to enforce the terms of private agreements is at all times exercised

19 subject to the restrictions and limitations of the public policy of the United States as manifested

20 in federal statutes.") (quotation marks and citation omitted). Therefore, despite Plaintiff's

21 conduct that may have, in other circumstances, properly triggered the doctrine of estoppel, the

22 Court will not dismiss the case in its entirety.

23

24

Rather, the Court finds that dismissal is appropriate only as to Plaintiff's claim that the purchase-option provision of the Master Lease, as amended, is contrary to law.[2]  25 U.S.C. § 404 states that lands allotted to any Indian "may be sold on the petition of the allottee . . . on such terms and conditions and under such regulations as the Sectary of the Interior may prescribe." The relevant regulations require, in part, that the trust land to be sold be appraised in order to determine its fair market value at the time of conveyance, 25 C.F.R. § 152.24, and that the Secretary approve the sale before it is finalized, *id.* § 152.17.

Section 43 of the Master Lease, as amended, is the relevant provision.  From the Court's reading of the amendment, it appears that the Lessor receives $500 for the creation of the purchase option, and thereafter, the sub-lessee must pay an additional $1,000 to exercise the purchase-option right. (Mod. of Master Lease 1, ECF No. 1-3, Ex. 4).  There are no provisions in the amendment mandating a particular purchase price for the lot or setting out the methods whereby the trust-to-fee conveyance is to take place.  Indeed, the amendment states that if the sub-lessee decides to exercise the purchase option, the sub-lessee must pay Plaintiff "$1,000 for each lot to be purchased." (*Id.*).  This indicates that the $1,000 is paid in anticipation of the actual purchase.  The $1,000 payment is the price for exercising the purchase option, not the price to be paid for the lot itself.[3]  Before this payment is made, however, Plaintiff, as Lessor, is to "take all

---

[2] The Court notes that both the Master Lease and the amendments were attached to the Complaint and may therefore be considered on Defendants' Motion to Dismiss without converting the Motion into one for summary judgment. *Ritchie*, 342 F.3d at 907–08.

[3] This conclusion is further supported by comparing the language of the amended Section 43 with how Section 43 originally read.  The original version stated that "[t]he purchase price for the Property (the "Purchase Price") shall be equal to Five Hundred Dollars ($500.00) per lot for all lots subleased by Lessee or One Hundred Thousand Dollars ($100,000.00), whichever is greater." (Master Lease § 43.3, ECF No. 1-2).  The Court agrees that this language is problematic under the relevant regulations.  However, the amended version of Section 43 does not include a predetermined purchase price.  Nowhere in the amended Section 43 could the Court locate such direct language mandating that the lots be sold for a particular amount.  The most reasonable reading of the amended section, in the Court's view, is that "a one (1) time payment of $1,000.00 for each lot *to be purchased*," (Mod. to Master Lease 1, ECF No. 1-3, Ex. 4), means that the purchase will occur in the future, after the Lessor secures the fee patent via the lawful channels and pursuant to BIA regulation and the $1,000 is paid.

8

the necessary steps to acquire a fee patent for each lot pursuant to the respective applicable federal regulations governing Indian Trust Lands." (*Id.*).

Presumably, this would include securing both an appraisal to determine the fair market value and the Secretary's approval, as well as compliance with any other applicable regulation. As the Complaint points out, Section 43 does not contain an explicit requirement for either an appraisal or the Secretary's approval. (Compl. ¶¶ 22–23). That, however, does not mean that Section 43, as amended, expressly provides for sales to occur in violation of regulations. Instead, its lack of a predetermined sales price together with the mandate that Plaintiff, as Lessor, take *all* necessary steps to acquire the fee patent indicate that any trust-to-fee conveyance must occur in compliance with BIA regulations, instead of in violation thereof.[4]

Because the Master Lease does not expressly provide for the purchase option to be exercised irrespective of BIA regulations, the Court will interpret the absence of a fixed sales price and lack of contrary conveyance procedures as indication that trust-to-fee sales under the amendment must comport with what the BIA (and Congress) requires.[5] *See Elte, Inc. v. S. S.*

---

[4] Plaintiff argues that Robert Hunter did not have authority to approve trust-to-fee conveyances under the BIA policies in place at the time of his approval of both the Master Lease and the amended Section 43. However, approval of Section 43 is not *ipso facto* approval of any particular trust-to-fee conveyance. Instead, the amended Section 43 requires that Plaintiff, as Lessor, take all the necessary steps to acquire the fee patent, which would include receiving approval from the proper BIA authority for the sale. Thus, even if the local Superintendent did not in fact have authority to approve trust-to-fee conveyances, the amended Section 43 does not provide for any such transfers without additional approval from the appropriate BIA officer wielding the properly delegated authority.

[5] It does not appear as though any of the individual Defendants were able to exercise the purchase option under the original Section 43 of the Master Lease. As initially drafted, Section 43 did not allow any party to exercise the option until ten years after the inception of the Master Lease. However, the amended Section 43 was ratified only three years later and increased the ten-year waiting period to twenty-five years. Those twenty-five years will not expire until 2022. Moreover, the amended Section 43 seems to indicate that sub-lessees whose sub-leases were in place prior to the Section 43 amendment have two options: (1) modify the purchase option in the sub-lease to comport with the amendment, or (2) choose not to exercise the option. (*See* Mod. to Master Lease 2, ECF No. 1-3, Ex. 4 ("The sub-lessee/s who have entered into sub-lease contracts with the Lessee prior to this modification will have the right, and ability to modify their existing sub-lease agreements in compliance with this modification if they so elect, however, if the sub-lessee/s choice is not to exercise this option, then, in that event, the sub-lessee/s will continue with their existing sub-lease agreement without any hindrance, or objection from the Lessee, or Lessor.")). If, however, there are sub-lessees who were able to exercise the purchase option under the original, problematic version of Section 43, then any claim would be against the individual sub-lessee and the improper conveyance, not against the current version of the Master Lease, since the Court finds it legally sound as amended.

*Mullen, Inc.*, 469 F.2d 1127, 1131 (9th Cir. 1972) ("This court subscribes to the principle that where one interpretation makes a contract unreasonable or such that a prudent person would not normally contract under such circumstances, but another interpretation equally consistent with the language would make it reasonable, fair and just, the latter interpretation would apply."). The Court, therefore, dismisses with prejudice Plaintiff's claim that the purchase option is unenforceable as contrary to law.[6]

### III.    MOTION TO JOIN

Defendant PVHOA argues that the BIA should be joined as a party defendant in this case due to its necessary involvement in reviewing and approving leases for Indian-trust lands as well as trust-to-fee conveyances. (Mot. to Join 4–5, ECF No. 203). PVHOA fears that the Defendants in this case may be subjected to inconsistent obligations if the BIA is not included in these proceedings.

**A. Legal Standard**

Rule 19 governs whether joinder of an absent party is essential in a particular case, and it requires a court to engage in "three successive inquiries." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). First, the court must determine whether the person or party to be

---

[6] The real question in this case is what should be the proper remedy. The Court anticipates that Plaintiff will succeed in his claim that the Master Lease violates § 415 because it provides for a term length beyond the statutory maximum. However, this alone is probably an insufficient reason to find that the Master Lease, which has been in effect for nearly twenty years, is void *ab inicio*, especially given the amount of money that PTP and the other Defendants have invested in the Property. If the Court were to ultimately find that the Master Lease and sub-leases are void and title should be quieted in Plaintiff's favor, Plaintiff surely would not be entitled to the current value of the Property, as it has been modified and improved substantially. To allow Plaintiff such a windfall would obviously be inequitable. But it is unlikely that Plaintiff can compensate Defendants for the added value of the Property, as one estimate has current investments reaching around $3 million. (*See* Master Lease § 4, ECF No. 1-2). Likely, the most just result here would be to read the fifty years plus forty-nine years lease term as meaning twenty-five years plus an additional twenty-five years, which would have been within the Superintendent's authority at the time the Master Lease was approved. Such a reformation of the Master Lease and relevant amendment surely embodies the actual intent of the parties at the time of the agreement; that is, to have the lease run for the longest amount of time legally possible. *See Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) ("In the law of contract, a court may reform a contract to reflect the true intent of the parties if both parties were mistaken about the content or effect of the contract."). The Court, however, leaves it up to the parties to make the relevant arguments moving forward.

joined is "necessary." *Id.* Rule 19(a) provides a two-prong inquiry for determining whether a party is necessary. *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014). A party is necessary if (1) "in that person's absence, the court cannot accord complete relief among existing parties" or (2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

"If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Peabody W. Coal Co.*, 400 F.3d at 779. There are three circumstances in which joinder is not feasible under Rule 19(a): "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Id.*; *see also* Fed. R. Civ. P. 19(a). And third, if joinder is not feasible, "the court must determine . . . whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Peabody W. Coal Co.*, 400 F.3d at 779.

**B. Discussion**

The Court finds that joinder of the BIA as a Defendant in this case is both necessary and feasible. The Ninth Circuit's opinion in *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010), is particularly instructive on the matter. There, the parties disputed over alleged Title VII violations that were occurring at a mine on Navajo and Hopi reservation land. The mining company leased the mines from the tribes, and a provision of the lease required the company to provide employment preferences to Navajo job applicants. 610 F.3d at 1074. The

11

lease was approved by the Department of the Interior ("DOI") as were subsequent amendments and extensions. *Id.* at 1075. The Secretary who served during the time the lease was drafted and approved declared that the inclusion of the Navajo employment preferences was required. The lease also required that the Secretary approve the agreement and subsequent amendments. *Id.*

The Equal Employment Opportunity Commission ("EEOC") filed suit against the mining company on the basis of the provision. The Navajo Nation ("Nation") was eventually added as a defendant. The mining company and the Nation then sought for joinder of the Secretary under Rule 19. In evaluating the defendants' arguments for joinder, the court noted that the mining company was "caught in the middle of a dispute not of its own making" since the preference provision at issue was included and approved by the Secretary. *Id.* at 1080. The court further noted that "[i]f the Secretary [were] not made a party to the suit, he [could] ignore the court's judgment and place conflicting demands upon the Nation who [would] be required by res judicata to honor the judgment." *Id.* at 1080–81.

The court determined that the Secretary was a necessary party under both Rule 19(a)(1)(A) and Rule 19(a)(1)(B). If the Secretary were not joined then complete relief could not be afforded to the existing parties since the Secretary was ultimately responsible for the problematic provision. *Id.* at 1081. The court concluded that the Secretary had an interest in the subject-matter of the action since the employment-preference provision had been required and approved by him and failure to join would jeopardize his interest in the legality of the provision. *Id.* at 1081–82. The court explained that "[a] public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices." *Id.* at 1082 (citation omitted). The court finally noted that if the Secretary were not joined, it could leave the current defendants between "a rock and a hard place" since the court's

judgment might require one course of action while the Secretary might demand another course upon threat of invalidating the lease. *Id.*

Although the court found that the Secretary was a necessary party, it determined that joinder was not feasible. The posture of the case required the Secretary to be added as a defendant. However, since the EEOC was the plaintiff in the action, certain statutory provisions prohibited the EEOC from filing suit against the Secretary on its own authority. *Id.* at 1083. The court then proceeded to determine whether the action could proceed without the Secretary's participation. *Id.*

In the present case, the BIA is a necessary party for many of the same reasons identified by the Ninth Circuit in *Peabody*. First, the BIA through the local Superintendent approved the various provisions that Plaintiff now argues violate law and regulations. Like the Secretary in *Peabody* that exercised authority by requiring and then approving the employment-preference provision, the BIA Superintendent used his authority to review and sign off on the Master Lease as well as its subsequent amendments. Although the BIA has expressed its current position that the provisions at issue in this case are unlawful, that does not negate the fact that prior BIA action was taken to approve them in the first place. Because this lawsuit seeks to invalidate a lease that the BIA previously approved, the BIA has an interest in its resolution. *See Peabody*, 610 F.3d at 1082 (citing *Davis v. United States*, 192 F.3d 951, 959 (10th Cir. 1999)).

Second, failure to join the BIA could leave Defendants open to a substantial risk of incurring inconsistent obligations. Rule 19(a)(1)(B)(ii). The Court's ultimate judgment in this case regarding Plaintiff's claims may result in an invalidation of portions of the Master Lease, or in its entirety. On the other hand, it could result in an upholding of portions of the Master Lease, or in its entirety. In either situation, the BIA might disagree and proceed under a conflicting

13

interpretation of the disputed provisions.  Thus, joinder of the BIA is necessary here, despite the fact that no causes of action are raised against the agency, simply "in order to subject it, under principles of res judicata, to the 'minor and ancillary' effects of [the Court's] judgment." *Peabody*, 610 F.3d at 1079 (quoting *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982)).  The BIA is therefore a necessary party to this litigation.

The Court also finds that joinder of the BIA is feasible.  Unlike the court's finding in *Peabody* that for statutory reasons the EEOC could not be permitted to proceed against the Secretary, no such statutory restraints are at issue here.  Furthermore, joining the BIA in this case does not undermine venue or the Court's subject-matter jurisdiction, as the validity of the Master Lease raises issues under federal law. *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998).  Personal jurisdiction over the BIA is likewise not a problem, nor is the sovereign immunity issue that Plaintiff raises in his Response.  The Court agrees with PVHOA that the Administrative Procedure Act ("APA") provides for the necessary waiver of immunity and supports joinder of the BIA. *See* 5 U.S.C. § 702.  Plaintiff is, after all, at least impliedly, if not explicitly, challenging the BIA's approval of the Master Lease and the subsequent amendments. *See Gallo Cattle Co.*, 159 F.3d at 1198 (stating that the APA provides a waiver of sovereign immunity in suits seeking judicial review of a federal agency action under §1331).

Therefore, because the BIA is a necessary party to this action and its joinder is feasible, the Court finds that PVHOA's Motion should be granted and the BIA joined as a Defendant. The Court hopes that by joining the BIA, all parties to this lawsuit will be able to negotiate a settlement—as it appears was once attempted—so that ultimate resolution might occur outside of the courtroom and the individual sub-lessees may go about their lives without worrying over whether Plaintiff is going to succeed in kicking them out of their homes.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 229) is GRANTED in part and DENIED in part.  The Motion is GRANTED as to Plaintiff's claim that the amended purchase option violates law and BIA regulations, and the dismissal is with prejudice.  The Court finds that the most reasonable interpretation of the relevant lease provisions requires compliance with applicable laws and regulations.

IT IS FURTHER ORDERED that Defendant PVHOA's Motion to Join the BIA as a Party Defendant (ECF No. 203) is GRANTED.  The BIA should be included as a Defendant and served accordingly.

IT IS SO ORDERED.

Dated: September 3, 2015

_____
ROBERT C. JONES
United States District Judge