**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LEON MARK KIZER, | ) <br> ) |
| Plaintiff, | ) <br> ) 3:15-cv-00120-RCJ-WGC |
| vs. | ) <br> ) |
| PTP, INC. et al., | ) **ORDER** <br> ) |
| Defendants. | ) <br> ) |

This case arises out of the lease of Indian land allotted to an individual Indian and held in trust by the United States.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Leon Mark Kizer is a member of the Washoe Indian Tribe of Nevada and California ("the Tribe"). (First Am. Compl. ¶ 4, ECF No. 338). He owns a 62.76-acre parcel of land in Douglas County, Nevada ("the Property") that the United States holds in trust for him pursuant to 25 U.S.C. § 348. (*Id.*). In October 1997, Plaintiff entered into a 99-year lease (fifty years plus an automatic renewal of forty-nine years) of the Property ("the Master Lease") with PTP, Inc. a commercial developer, for $331,000. (*Id.*; Master Lease § 9(1), ECF No. 338-2)). The Master Lease incorporates the provisions of 25 U.S.C. § 415 as well as the rules promulgated under 25 C.F.R. Part 162, which concern the leasing of allotted Indian-trust land such as the Property. (First Am. Compl. ¶ 14). The Master Lease also contains a purchase option

that grants PTP or a homeowners' association with a right at any point after ten years from the date of the Master Lease to purchase the Property for a certain sum. (*Id.* ¶ 22). The Master Lease was approved by Robert Hunter, the Superintendent of the Bureau of Indian Affairs ("BIA") Western Nevada Agency at the time. (*Id.* ¶ 28). The Property was subdivided into 250 individual lots for single-family and manufactured homes and PTP invested considerable money in establishing infrastructure to support the developing community.

After October 1997, Plaintiff and PTP executed three amendments to the Master Lease. The first amendment adjusted the lease term, requiring approval of the Superintendent rather than an automatic renewal for the additional forty-nine years. (*See* Mod. of Master Lease, Feb. 6, 1998, ECF No. 338-3, at 19). The second amendment completely replaced the language governing the purchase option, requiring a one-time payment of $1,000 if a sublessee, rather than PTP or the HOA, chose to exercise the option and requiring Plaintiff to take all steps necessary to secure a fee patent pursuant to federal regulations governing Indian-trust lands. (*See* Mod. of Master Lease, Sept. 1, 2000, ECF No. 338-3, at 22). The third amendment leased additional acreage from Plaintiff to PTP for $38,000. (Mod. of Master Lease, Jan. 8, 2002, ECF No. 338-3, at 26). Each of these amendments was approved by the Superintendent serving at the time of the particular amendment. (*See* First Am. Compl. ¶¶ 31–34).

In October 2006, the BIA sent a letter to Tribal Chairman Brian Wallace in response to concerns the Tribe had expressed regarding certain provisions of the Master Lease, namely the length of the term and the purchase option. The BIA indicated that both provisions appeared to violate federal law. (Anspach Letter, Oct. 24, 2006, ECF No. 333-3, at 33). The BIA explained that 25 U.S.C. § 415 allows trust land to be leased by Indian owners, with approval from the Secretary of the Interior or his designated representative, for "business purposes." However, the term of such leases is not to exceed twenty-five years, with one additional term of twenty-five

years, for a maximum of fifty years. (*Id.*). The BIA opined that the Master Lease was therefore valid "for the maximum period authorized by federal law," i.e., "the maximum (extended) term [of] fifty years." The sale of Indian-trust land is also restricted by Congress, with the terms and conditions of such regulations delegated to the BIA. Under relevant BIA regulations, non-Indian purchasers may only purchase trust land at the fair market value calculated at the time of sale and with BIA approval. (*Id.*). Accordingly, the BIA opined that the purchase option provision was "null and void." (*Id.*).

Four years later, the BIA sent a letter to Pineview Estates Homeowners Association ("PVHOA"), the association for the community developed by PTP, indicating that the Washoe Tribe had raised issues concerning the validity and enforceability of the Master Lease and that the BIA had engaged Plaintiff and its Western Regional Office ("WRO") in discussions regarding the lease term and purchase option. (Brown Letter, Aug. 25, 2010, ECF No. 338-3, at 39). The letter explained that the WRO had prepared a framework whereby the leased premises could be transferred to fee status and that steps should be taken to correct the uncertainties in the Master Lease. (*Id.*). It requested that PVHOA confirm a meeting date with Plaintiff, the WRO, and representatives of PTP to determine how best to move forward. (*Id.*). It is unclear whether such a meeting took place or what the parties resolved to do.

On February 26, 2015, Plaintiff sued PTP, PVHOA, and the individual sublessees of the 250 lots in this Court, seeking declaratory judgment that the Master Lease and subsequent subleases are void *ab initio* because the Master Lease violates federal law governing trust lands, and asking the Court to quiet title to the Property in his favor. (First Am. Compl. 22–23). Defendants moved to dismiss for failure to state a claim. PVHOA moved to join the BIA as a Defendant. The Court dismissed with prejudice Plaintiff's claim that the amended purchase option violates law and BIA regulations, because the relevant lease provisions require

compliance with applicable laws and regulations.  The Court otherwise denied the motion to dismiss and granted the motion to join the BIA as a Defendant.

Plaintiff filed the First Amended Complaint ("FAC").  Plaintiff filed two motions to dismiss counterclaims and moved to further amend.  The BIA moved to dismiss for lack of jurisdiction.  Due to settlement discussions, the Court denied those motions without prejudice.  The parties later refiled the motions despite having informed the Court of a settlement in the meantime.  The Court denied a motion to further delay the deadline to file dismissal documents and ruled on the refiled motions, dismissing the BIA under the APA's statute of limitations, dismissing the counterclaims, with leave to amend in part, and denying leave to amend the FAC as moot.

## II.  DISCUSSION

The parties have asked the Court to approve a Settlement Agreement.  Under Rule 41 the parties may agree to dismiss with or without a settlement, without the Court's approval.  This is not a class action requiring a fairness determination under Rule 23(e) to protect class members, and the parties do not appear to request a determination of good faith under Nevada Revised Statutes section 17.245 to the potential detriment of non-party tortfeasors.  Presumably, the parties desire the Court's imprimatur for some other purpose.  But whatever the standards of fairness to be applied, it is impossible for the Court to make such a determination without knowing the amounts under the "Confidential Payment Agreements," as that term is used in the Settlement Agreement.  The Court cannot find those agreements attached nor the relevant amounts revealed in the documents that have been filed.  The parties may keep those amounts confidential from the general public, but the Court cannot determine fairness without that information.  The parties must submit the relevant information in camera if they desire the Court's imprimatur, which, again, they do not require under Rule 41.

# CONCLUSION

IT IS HEREBY ORDERED that a ruling on the Motion to Approve Settlement (ECF No. 448) is DEFERRED.

IT IS FURTHER ORDERED that the parties shall, within fourteen (14) days, SUBMIT the Confidential Payment Agreements in camera.

IT IS SO ORDERED.

Dated this 3rd day of November, 2017.

_____
ROBERT C. JONES
United States District Judge